UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOANN MOOTS, | ) | CASE NO. 1:11-CV-43 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE MCHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Joann Moots's application for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 is supported by substantial evidence, and therefore, conclusive.

For the reasons stated herein, the Court AFFIRMS the decision of the Commissioner.

I. INTRODUCTION & PROCEDURAL HISTORY

On September 28, 2007, Joann Moots[1] ("Plaintiff" or "Moots") filed an application for a Period of Disability and Disability Insurance Benefits. (Tr. 106-13). Plaintiff alleged that she became disabled on February 1, 2001, due to suffering from bipolar disorder, arthritis in her hands and arms, and being suicidal. (Tr. 145). Plaintiff's application was denied initially and upon reconsideration. (Tr. 51-52). Subsequently, Plaintiff requested a hearing before an administrative law judge to contest the denial of her application. (Tr. 76-77). The Social

---

[1] Several documents in the record state Plaintiff's name as "Pamela J. Moots". *See, e.g.,* (Tr. 234-41, 394, 443, 457).

Security Administration later acknowledged receipt of Plaintiff's request and informed her that her request was approved. (Tr. 78-79, 87-91).

On September 28, 2009, Administrative Law Judge Penny Loucas (the "ALJ" or "ALJ Loucas") convened a hearing via video to consider Plaintiff's application for benefits. (Tr. 6-50). ALJ Loucas presided over the hearing from Springfield, Massachusetts, and Plaintiff and her counsel appeared in Mansfield, Ohio. (Tr. 56). Vocational expert, James Parker (the "VE") also appeared and testified at the hearing. (Tr. 38-50).

On October 26, 2009, ALJ Loucas issued her unfavorable ruling concluding that Plaintiff was not disabled under the Social Security regulations. (Tr. 53-65). In the decision, the ALJ applied the five-step sequential analysis,[2] and determined that Plaintiff retained the ability to

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

perform work which existed in significant numbers in the national economy. (*Id*.) Plaintiff sought review of the ALJ's decision from the Appeals Council, but it denied her request, thereby making ALJ Loucas's decision the final decision of the Commissioner. (Tr. 4-5, 1-3). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff, born on January 7, 1948, was fifty-three years old on her alleged onset date, and was therefore considered as a "person closely approaching advanced age" for Social Security purposes. (Tr. 51); *See* 20 C.F.R. § 404.1563(d). Moots graduated from high school and attended fifteen months of college. (Tr. 141). She has past experience working as a window frame assembler, greeter, store detective and as a corrections officer. (Tr. 40).

## II. MEDICAL EVIDENCE[3]

Plaintiff has a history of problems associated with the use of her hands and arms. In July 2001, Moots underwent x-rays of both of her hands after expressing complaints of pain in them. (Tr. 394). Upon examination, her radiologist, Dr. K. Lew, noted "quite advanced osteoarthritic changes" and spur formation in both of Plaintiff's hands. (*Id*.) Dr. Lew diagnosed Plaintiff with "[a]dvanced osteoarthritic changes of the distal interphalengeal joints of both hands." (*Id*.) Following this diagnosis there is a three year lapse in Plaintiff's treatment of this condition.[4] It was not until 2004 that she sought treatment for this impairment again.

---

[3] The Court's recital of the medical evidence only references the evidence relevant to Plaintiff's physical impairments during the period under review—Plaintiff's alleged onset date of February 1, 2001 through her date last insured of December 31, 2004. Plaintiff did not challenge the ALJ's decision with regard to her mental limitations, and therefore, evidence pertaining to that condition has been omitted from the Court's discussion.

[4] Plaintiff was incarcerated for a period of five months during this three year gap. (Tr. 23).

On July 28, 2004, Moots presented to Dr. Carlos Nani[5] complaining of numbness in all of the fingers on her right hand. (Tr. 235-36). Dr. Nani diagnosed Moots with rheumatoid arthritis and carpal tunnel syndrome in her right hand, and recommended surgery. (*Id.*) The next day Moots underwent surgery on her right hand. (Tr. 236). Months later, Plaintiff presented to Dr. Robert Dawson complaining of pain in her right hand and wrist due to an injury she suffered while working at a factory. (Tr. 457). Dr. Dawson noted that Moots experienced "pain with CMC grind maneuver" and had tenderness in the base of her index carpal metacarpal joint. (*Id.*) He administered Plaintiff a series of injections of pain medication, after which Plaintiff noted that her symptoms subsided. (Tr. 457). Subsequently, when Plaintiff presented to Dr. Dawson for a follow-up visit on March 9, 2005, she indicated that her right wrist was "100%" better. (Tr. 458). However, during the appointment, Plaintiff also informed Dr. Dawson that she had begun to experience pain in her left elbow. (*Id.*)

## III. ALJ RULING

Following the completion of the administrative hearing, ALJ Loucas ruled that Plaintiff was not disabled. (Tr. 53-65). At step one, the ALJ found that Moots had not engaged in substantial gainful activity from her alleged onset date of February 1, 2001 through her date last insured of December 31, 2004. (Tr. 58). At step two, ALJ Loucas held that Plaintiff suffered from two severe impairments: bipolar disorder and disorders of the hand. (Tr. 59). Next, at step three, the ALJ determined that none of Plaintiff's severe impairments met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 59-60). Before moving to step four, ALJ Loucas assessed Plaintiff's residual functional capacity ("RFC") to

---

[5] Plaintiff mistakenly interchanged Dr. Nani's first and last names, referring to the doctor as Dr. Nani Carlos.

4

work. The ALJ concluded that Moots retained the RFC to perform a limited range of light work as defined in 20 C.F.R § 404.1567(b). (Tr. 60-64). ALJ Loucas further noted that from a mental health standpoint, Plaintiff suffered from no more than moderate limitations. (*Id.*) Based upon Plaintiff's prior experience working as a greeter, at step four, the ALJ found that Plaintiff's RFC permitted her to return to this type of work. (Tr. 64-65).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.* Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.* The Commissioner's determination must stand if supported

5

by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)*.*

## VI. ANALYSIS

Plaintiff challenges the ALJ's ruling on three grounds. First, Moots argues that ALJ Loucas erred by failing to accurately assess Plaintiff's RFC. For instance, Moots submits that the ALJ should have imposed more restrictive limitations on her ability to push, pull, and to perform fine and gross manipulation based upon the medical opinion of her treating physician. Second, Plaintiff attacks the ALJ's finding that she could return to her past work. Moots argues that this finding was in error because the ALJ relied upon faulty testimony solicited from the vocational expert. Finally, Plaintiff submits that had the ALJ properly assessed her limitations, the Medical-Vocational Guidelines would have directed a finding of disability.

### A. RFC Finding

In her RFC finding, ALJ Loucas ruled that during the relevant period under review:

> [Moots] had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). With normal breaks, the claimant was able to sit for 6 hours out of an 8 hour work day and stand and walk for 6 hours out of an 8 hour workday. However, she could not perform frequent flexing/extending of the wrists. She is able to occasionally work overhead and occasionally perform gross manipulative tasks bilaterally. From a mental health perspective, the claimant is moderately limited, defined as more than a slight limitation, but still able to perform in a satisfactory manner, in her ability to understand, remember, and

      carryout simple instructions, respond appropriately to usual work situations and routine work changes, and in her ability to interact appropriately with the general public.

(Tr. 60-61). Plaintiff objects to ALJ Loucas's RFC finding because Plaintiff believes that the ALJ should have imposed additional restrictions on Plaintiff's ability to use her upper extremities. Plaintiff's argument primarily relies upon the opinion of Dr. Sudhir Sinha, Plaintiff's treating physician. Plaintiff notes that in March of 2009, Dr. Sinha restricted Plaintiff from lifting and carrying more than 10 pounds occasionally due to Plaintiff's severe arthritis. (Tr. 504). Dr. Sinha also opined that Moots should rarely or never perform any reaching, handling, pushing, pulling, or fine or gross manipulation. (Tr. 505). Based upon these findings, Plaintiff argues that the ALJ's RFC is unsupported by the record, and accuses ALJ Loucas of disregarding Dr. Sinha's opinion in violation of the "treating source rule" set forth in *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

      Plaintiff's argument is unavailing for several reasons. As Defendant noted, the relevant period under review ran from Plaintiff's alleged onset date of February 1, 2001, through December 31, 2004, the date Plaintiff's insured status expired. In order to establish her entitlement to benefits, Moots had to show that she was disabled prior to the date her benefits expired. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 497 (6th Cir. 2006). Accordingly, Plaintiff's reliance upon evidence post-dating her date last insured is misplaced and such evidence does not undermine the ALJ's RFC finding. Here, Plaintiff relied extensively upon Dr. Sinha's statements from 2009 to refute the RFC articulated by ALJ Loucas. However, because Dr. Sinha did not offer her opinion of Plaintiff's condition until several years after the expiration of Plaintiff's insured status, this evidence is not sufficient to show that Plaintiff was disabled during the relevant period. ALJ Loucas specifically noted, "[t]o the claimant's detriment, there

is substantial evidence of additional impairments well after the date last insured, but it is too far in the future to relate back to the alleged onset date." (Tr. 63). Neither has Plaintiff alleged or pointed to evidence demonstrating that Dr. Sinha's opinions given in 2009 were intended to be reflective of Plaintiff's condition between 2001 and 2004.

Additionally, the undersigned finds that ALJ Loucas's treatment of Dr. Sinha's medical opinion was not in violation of the treating source rule. This doctrine recognizes that physicians who have a long-standing treating relationship with a patient are best equipped to provide a complete picture of the individual's health and treatment history. Wilson, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). As such, opinions from these physicians are entitled to controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record". Wilson, 378 F.3d at 544. The governing regulations require ALJs to provide "good reasons" for the weight ultimately given to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2)-(6). Although Plaintiff maintains that ALJ Loucas disregarded Dr. Sinha's opinion in violation of this rule, Plaintiff failed to identify any findings issued by Dr. Sinha, during or relating to Plaintiff's condition before her insured status expired, indicating that Plaintiff's conditions were more disabling than what ALJ Loucas determined. Thus, in addition to the fact that the records upon which Plaintiff relies post-date the expiration of her insured status, Plaintiff failed to identify any relevant opinion or findings of Dr. Sinha which would have triggered the application of the treating physician rule. As a consequence, ALJ Loucas was not required to explicitly address Dr. Sinha's opinions. See Kornecky, 167 F. App'x at 507-08 ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

Despite Plaintiff's criticisms of the ALJ's RFC finding, it is supported by the substantial evidence in the record. "The ALJ is ultimately responsible for determining a claimant's RFC based on relevant medical and other evidence in the record." *Bingaman v. Comm'r of Soc. Sec., 186 F. App'x 642, 647 (6th Cir. 2006)* (*citing* 20 C.FR. §§ 404.1546(c), 404.1545(a)(3)). Although Plaintiff was diagnosed with "quite advanced osteoarthritic changes" in both hands in 2001, the record does not show further complaints or treatment of this condition until three years later in 2004. Following surgery and subsequent pain injections, Moots reported that her right wrist was "100%" better. It was not until March 2005, after her insured status expired, that Plaintiff informed Dr. Dawson that she had begun to experience pain in her left elbow. Accordingly, the medical record supports the ALJ's RFC finding with regard to Plaintiff's capacity to use her arms and wrists during the relevant timeframe. Plaintiff has not pointed to any evidence, relating to the period under review, which shows that greater restrictions should have been imposed. Finding that the RFC articulated by the ALJ is supported by substantial evidence also renders moot Plaintiff's contention that she is entitled to benefits pursuant to the Medical-Vocational Guidelines.

### B. Past Relevant Work

Next, Moots challenges ALJ Loucas's ruling that she could return to her past relevant work as a greeter. Plaintiff presents two arguments on how this ruling was in error. First, Plaintiff contends that the VE's testimony did not provide substantial support for this finding because the hypothetical question posed by the ALJ to the VE did not accurately portray Plaintiff's impairments. Second, Moots highlights that the RFC which the ALJ articulated to the VE was inconsistent with the RFC contained within the ALJ's written decision. Because of this discrepancy, Plaintiff argues that the VE's testimony does not substantiate the ALJ's step four

ruling because the VE's testimony was based upon a hypothetical person with a different set of characteristics (i.e. RFC) than those attributed to Plaintiff in the ALJ's written opinion.

In this circuit, it is well-established that a vocational expert's testimony will only provide substantial support for an ALJ's decision, when the testimony is elicited in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). But, an ALJ is under no duty to incorporate a claimant's unsubstantiated complaints into the hypothetical question posed to the VE. *Griffith v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts. In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." ) (internal citations omitted). Moots argues that the hypothetical questions posed by ALJ Loucas were inadequate because they should have incorporated additional restrictions on her ability to use her arms and wrists. However, as previously discussed, Plaintiff failed to show proof that her severe arthritis produced greater restrictions, during the period under review, than those accepted by the ALJ. In fact, ALJ Loucas indicated that she found that Plaintiff's testimony tended to reflect that she was "more limited and restricted than [wa]s established by the medical evidence", and that Plaintiff's self-imposed restrictions on her activities of daily living were not "objectively quantified prior to [her] date last insured." (Tr. 62). As a consequence, it was reasonable for the ALJ to omit further restrictions from her hypothetical questions posed to the VE.

Lastly, Plaintiff argues that remand is warranted because the ALJ's ruling at step four was not supported by the VE's testimony. In formulating her hypothetical questions at the

hearing, ALJ Loucas described Plaintiff as having no restrictions on her ability to reach, handle, feel, manipulate, or work overhead, other than that she could only use her dominant left hand. On the other hand, in her written opinion, the ALJ's RFC finding restricted Moots from performing "frequent flexing/extending of the wrists" or more than occasionally performing "gross manipulative tasks *bilaterally*". (Tr. 60) (emphasis added). Plaintiff argues that there is a significant difference between these two descriptions because the first only contemplates the claimant having problems with her non-dominant right hand, whereas the second acknowledges limitations in *both* hands.

The Court finds that the inconsistency between the RFC articulated to the VE and that included within the ALJ's written opinion does not constitute reversible error. Despite the differences between these two statements, such differences did not undermine the legitimacy of the ALJ's ruling at step four of the sequential evaluation process because the ALJ's decision is sound independent of the VE's testimony. As the Commissioner correctly noted, an ALJ is not required to solicit vocational expert testimony to determine whether a claimant can return to his or her prior relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010); 20 C.F.R. § 404.1560(b)(2) ("We *may* use the services of vocational experts… to help us determine whether you can do your past relevant work, given your residual functional capacity.") (emphasis added). Rather, "[t]he regulations *permit* an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC." *Griffith*, 217 F. App'x at 429. Therefore, to the extent that the inconsistencies between the two articulations of Plaintiff's RFC tainted the reliability of the VE's testimony at step four, this nullification does not automatically invalidate the ALJ's step four finding because an ALJ's ruling at this step is not dependent upon vocational expert testimony. *See id*.

11

The VE labeled Plaintiff's position as a greeter as falling under code number 352.667-010 of the Dictionary of Occupational Titles ("DOT"). (Tr. 40). Under this code, the DOT describes the position as follows:

> Greets guests arriving at country club, catered social function, or other gathering place. Introduces guests and suggests planned activities, such as dancing or games. Gives directions to personnel engaged in serving of refreshments. May plan menus and supervise activities of food-service workers. May plan and participate in social activities, games, and sports, depending on nature of establishment or function. May deposit or pick up guests at railway station, home, or other location as directed.

DICOT 352.667-010, 1991 WL 672913. It also requires the ability to perform frequent[6] reaching and handling. *Id*. Plaintiff does not allege the she was incapable of meeting the mental challenges of such a position. Instead, she merely argues that the difference in the RFC articulations—the first indicating that she only had limitations in her non-dominant hand, and the second indicating that she had limitations in both—prevented the ALJ from relying upon the VE's testimony to show that she could return to her prior work as a greeter because the VE's testimony was in reference to an individual with limitations in her non-dominant hand, but not in both hands as the ALJ's written opinion indicated.

It was Plaintiff's burden to show that she was unable to perform the functional demands of the greeter position both (1) as she actually performed them, and (2) as they are generally performed in the nation. *See Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 556-57 (6th Cir. 1995); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002); SSR 82-61. Plaintiff has not satisfied this burden. Because the RFC contained within ALJ Loucas's written opinion restricted Plaintiff from performing frequent flexing or extending of her wrists or

---

[6] The DOT defined "frequent" as "exist[ing] from 1/3 to 2/3 of the time". DICOT 352.667-010, 1991 WL 672913.

more than occasional manipulative tasks, Plaintiff could reasonably dispute her ability to perform the duties of a greeter as described by the DOT, as it specifically notes that the job entails frequent reaching and handling. But, even giving Plaintiff the benefit of the doubt on this matter will not satisfy her burden because she did not show that she was unable to perform the greeter position as she formerly performed it. When ALJ Loucas asked Moots to describe her duties while working as a greeter, Plaintiff responded that she was responsible for "greeting [ ] people as they came in the door." (Tr. 17). Moots has not shown how her impairments, even under the ALJ's more restrictive RFC announced in her written decision, prevented her from returning to this position. Pursuant to Social Security Ruling 82-61, "where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" SSR 82-61, at *2. Therefore, even putting aside the VE's testimony, there is substantial evidence that Plaintiff's RFC, under either articulation offered by the ALJ, allowed her to return to her past work as a greeter as she actually performed it in the past.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: February 21, 2012.